Jackson, J.
The question is, whether a note and [ *482 ] * mortgage made to a man and his wife shall, in case she survives him, go to his administrator or his widow. In considering this question, we except the case of a voluntary gift by the husband to his wife ; as when he advances his own money or other property, and takes for it a note or bond to himself and his *399 wife. This, like every other voluntary conveyance, would, without doubt, be void as against the creditors of the husband. But when no such fact appears, and especially when, as in the present case, the contrary appears, the law seems to require that the wife shall have the note or bond, if she survives. All the very numerous cases, in which the husband and wife have been permitted to join in an action on such a contract, may be considered as maintaining the proposition ; because it is understood as a general rule, that they cannot join, unless in cases where the action would survive to her, and not to the executors or administrators of the husband. Many of these cases may be found in Com. Dig. Tit. Baron & Feme, V. W. and X.
A distinction seems to have been made, in ancient times, between a bond or other specialty made to the husband and wife, and a simple contract; and it was thought that, in the latter case, they could not sue jointly. Thel. Lib. 2, c. 5, $ 23, states the law to be thus, although, in the book cited [48 Edw. 3, 18], the point was not expressly decided by the court. But there are a great number of cases, in which the husband and wife have maintained assumpiit on promises, of which she was the meritorious cause, as it is expressed; that is, when the consideration for the promise arose from her property or her personal labor, without any objection for the want of a special contract. 1 Chitty on Pleading, 19, and the cases there cited ; also Com. Dig. in the places before cited.
Supposing the case of a note and mortgage to stand on the same footing as a bond in this respect, the point seems to be expressly settled. Comyns [Tit. Baron & Feme, F. 1.] lays it down as if clearly established, that an obligation to * the hus- [ *483 ] band and wife survives to the wife, in the same manner as a statute or recognizance would survive. He cites 1 Rol. Abr. 342, where the same point is stated in like manner. But Rolle, instead of citing any authority for it, cites 48 Edw. 3, 12, as contra. In the book referred to, a distinction was made between a recognizance or statute made to the husband and wife, and a bond ; and it was said that the former, being matter of record, would survive to the wife, who might take out execution after the death of her husband ; but that a bond would not survive, and that the action upon it must be brought by the husband alone, in his lifetime, and, after his death, by his executors.
This would appear, therefore, to be merely the opinion of Rolle, against that of the earlier lawyers. But, on further examination, we find sundry ancient cases, which go to support his opinion, and which he probably intended to cite, but inadvertently omitted, before citing (he case to tne contrary.
*400 In Fitz. Debt. 173, is a case from 14 Edw. 2, of debt by husband and wife, on a bond made to them during the coverture ; to which it was objected, that the wife could not have property in a chattel Jointly with her' husband ; but it was decided that the action was well brought.
Bro. Baron & Feme, 14, is a case of the same kind, from 43 Edw. 3, 10, and the action was maintained. In this case, it was argued, bj the counsel for the defendant, that if this action was maintainable, it would follow that, after the death of the husband, his widow would have the action; whereas he contended that the executors of the husband should have it. But it was answered by Finchden, who seems to have been then on the bench, and who was soon afterwards chief justice of the Common Pleas, that the executors would not have the action, but the widow would have it. This is the same Finch-den, who is stated to have afterwards expressed a different opinion in 48 Edw. 3, 12, before cited.
[ * 484 ] * Fitz. Joinder in action, 25, is a case from 47 Edu. 3, 12, of an action of covenant, by husband and wife, against the lessor, on a lease made to them during the coverture ; and the action was maintained.
The next case, in order of time, is that first mentioned, from 48 Edw. 3, 12; and, although Finchden does clearly express the opinion above quoted, yet, in a later part of the same report, he is represented as saying that, in case of a recovery of damages by husband and wile, or of a statute to them (which are matters of record), the widow, and not the executors of the husband, should have the execution ; and that “ perhaps it would be the same of a bond made to the husband and wife.”
Fitz. Briefe, 19. 3 Hen. 6, 37, is an action of debt by husband and wife, on a bond made to them during the coverture. It was objected, as in the other cases, that the action should have been by the husband alone ; but Babington, chief justice, answered, that it might be in their joint names, or by the husband alone, and that it had been adjudged good either way ; and the defendant was required to plead to the action.
In 15 Edw. 4, 9, Bro. Baron &f Feme, 50, the same point is stated in argument, and the reason assigned, viz., that in case of the death of the husband, the action would survive to the wife. In the fol lowing year, this point seems to have been more formally decided, than in any of the preceding cases. In 16 Edw. 4, 8, Bro. Baron Feme, 60, an action of debt was brought by husband and wife for arrearages of an account, &c. The action was held to be maintainable ; and, in stating the opinion of the court, it is said, among other reasons, “ that if an obligation be made to husband and wife *401 and the husband dies, the wife shall have it by survivorship, and not the executors of the husband ; quad fait concessum per totam curiam,.”
There are, also, a few modern cases, in which this point has been considered. In 1 Danv. Abr. 715, after stating that, if an obligation is made to husband and wife, the wife * shall [ * 485 ] have it by survivorship, (for which he cites 43 Ed.w. 3, 10, and 4 Hen. 6, 6), he adds, “ M. 6 Jac. B. C. adjudged upon demurrer, Tr. 10 Car. in Cane. Scaccarii, between Spark and Fairemanner, adjudged in a writ of error.” This is repeated in the same words in Viner, Baron Feme [B. a. pi. ]]. The case of Spark and Fairemanner does not appear to be reported in any other book. The other case referred to may perhaps be Norton vs. Glover, Noy, 149, in which this point came up incidentally, although it was not the question on the demurrer. In that case, a bond was made to husband and wife ; the husband died ; the wife took admin istration, and brought an action upon the bond as administratrix : she died before judgment, and then her executor brought a new action on the same bond, considering it as belonging to her by survivorship ; and it was adjudged on demurrer that the action did not lie. It was admitted that such a bond might be held by the husband and wife jointly, and, of course, it might have survived to her. But she might dissent to it after her husband’s death, and waive her right to the bond ; and her bringing the action as administratrix was considered as such a waiver, and as an election to take it as administratrix, and not in her own right. This seems to be the substance of that case', which, however, is obscurely reported.
In 2 Vern. 683, the husband had lent money, and taken several bonds and mortgages for it, in the name of himself and his wife. He died, having, by his will, charged his real estate with the payment of his debts. The wife claimed the bonds and mortgages as survivor. The heirs objected, and urged, among other reasons, that if this money was not liable for the husband’s debts, he might, by joining his wife in the security, defraud all his creditors. The lord keeper admitted that, as to creditors, it might be fraudulent ; but there being assets, without these bonds, to pay all debts and legacies, he decreed the bonds to the widow.
In 2 P. Will. 496, Lord Chancellor King said that a bond, given to husband and wife during coverture, would * survive to the wife. He was not then deciding the [ * 486 ] cause upon any principles peculiar to courts of equity, but expressing his opinion of the law.
Upon a review of these cases, it does not appear that the point in question has ever been expressly adjudged in any court of common law; unless, indeed, in those which are so obscure!v referred to bj ‘ *402 Danvers. But as it has been clearly settled in chancery, in the case cited from Vernon, and has been so often stated and agreed to be law, by so many different courts and judges, and as we do not find any intimation to the contrary in any of the later cases, we may justly consider the opinion expressed by Rolle and Comyns, as supported by good authority, in addition to what it derives from their own names.
It is also just and reasonable in itself. When the husband fakes a security for a debt, in the joint names of himself and his wife, he is understood to assent and intend that she shall have some peculiar benefit from it; otherwise he would take it in his own name alone. In the present case, the wife might have refused to convey her land, but upon condition that the security for the price should be thus made to herself with her husband.
It is true, that the husband may afterwards change his mind, and may release the demand, or take a new security for it, or bring the action in his own name ; and if he recovers the money, he will retain it to his own use. So, if a bond or note is made to the wife, without naming her husband, she can take nothing by it against his will ; and, even after having assented, he may release it, or recover the money to his own use. So he may sue a chose in action, belonging to his wife before coverture, and may retain the money to his own use. But if he does not reduce it to possession, he is considered as assenting that it shall continue to be the property of the wife, if she survives him.
In a case like the present, where the whole consideration for the contract proceeded from the wife, and where [ * 487 ] * there seems to have been an agreement or understanding between them, that the money should be in some manner secured to her use, it would haxre been a dishonorable, if not a fraudulent, act in the husband, if, without any change of circumstances, he had attempted to appropriate the money to his own ise. There is nothing in the case to show that he had such an intention, or that he in any manner refused to permit his wife to take an interest, jointly with him, in this note and mortgage.
It is therefore clear, that his administrator cannot now divest that interest, unless on account of the creditors of the husband whom he represents. If this could be considered as a voluntary conveyance by the husband to the wife, or as in any manner fraudulent as it respected his creditors, the claim of the administrator would stand un a very different ground. It is true, the husband had an interest in the laud during the joint lives of himself and his wife ; and, if he had issue, he might have held it for his own life, if he had survived In the events which have occurred, the husband has received nu *403 actual compensation for this interest of his, which was conveyed in the same deed with the estate of his wife. But for this small portion of the estate, which he could claim to his own use, he took the chance of receiving the price or value of the whole, in case he had survived his wife. This arrangement, if considered as a bargain, was certainly in his • favor, and to the prejudice of his wife. If his creditors could have had a voice in it, they would have thought it for their interest that the land should be sold, so as to give him a chance of receiving the whole money, with which to pay his debts, rather than that, the land should remain to the wife, leaving to them only the power to take his life estate in it.
Considering it therefore as a sale by him of his estate in the land, he received a full- consideration for what he sold. He did not give to his wife his share of the price of the land, but set jt against the larger share that belonged * to her, [ * 488 ] upon an understanding or agreement that the survivor should take the whole. There was, then, nothing in the transaction that was unfair or unjust, as it regarded his creditors ; nor does it appear to have been done with any fraudulent design to secrete his property, or to put it out of their reach. Under these circumstances, we can see no reason to take this case out of the common rule, applicable to bonds, notes, or other promises, made to the husband and wife during the coverture.
According to the agreement of the parties, the plaintiff must be nonsuit, and judgment must be for the defendants, for costs.