## AZOR R. PHELPS, Executor, &c. *versus* DOLLY PHELPS.

A married woman lent the interest accruing after her marriage upon a note held by her before her marriage, and the borrower gave her therefor a promissory note, which was made payable to her, in accordance with the wishes of her husband, in order that she might be the exclusive owner thereof ; and the husband frequently declared, that the money, as well as the interest thereon, was her separate property, and that he did not intend to claim or receive any part thereof to his own use ; but he also stated to a third person, that no agreement had been made with the wife in relation to the money, either before or after the marriage. After the death of the husband, the borrower paid to the wife the amount due on his note, she having retained it in her custody. It was *held*, that she was entitled to retain the amount so paid, for her own use, as against the executor of the husband.

The husband, in such case, devised his real estate to his wife for life, in lieu of dower, and upon the condition, that she should make no claim to any property as her own out of his estate and allow all property which she had usually considered as her own private property to be distributed as the other parts of his estate. After his death on April 3, 1837, the wife continued to reside in his house, but without setting up any claim thereto, a portion of it being occupied, with her permission, by a stranger, for five months. It was *held*, that these acts did not amount to an acceptance of the provision made for her in the will and to a relinquishment of her right to the money, she being entitled under Revised Stat. *c.* 60, § 6, to con tinue in the occupation of the house with the heirs of her husband, so long as they should not object.

ASSUMPSIT by the plaintiff, as executor of Azor Phelps, deceased, to recover a sum of money received by the defendant of Nathan Howe.

The parties stated a case.

The defendant was married to the testator in 1815, and during her coverture, took a note from Howe, payable to herself, for money which she lent him. This note was paid to her by Howe after the death of the testator ; and the sum so paid is the subject of the present action.

It appeared, that the money thus lent consisted of interest paid upon a promissory note or notes belonging to the defendant at the time of her marriage with the testator ; that the testator, during his life, frequently declared that the same, as well as the interest thereon, was the separate property of the defendant, and that it was not his intention to receive any part of it to his own use or to claim any right thereto ; that from time to time, as new notes were given for the accruing interest and for portions of the principal which were paid, they were made payable to the defendant, in her own name, with the con sent of the testator and in accordance with his wishes, in order that she might continue to be the sole and exclusive owner thereof ; that such money and interest remained in this situation until the testator's death, except a part which was expended in the support of the family, and a part of the accruing interest which was from time to time taken by the testator during the coverture, and for which he gave to the defendant his own promissory notes ; and that the defendant always had had the custody of the notes so taken by her, except that, after the testator's death, she gave up the notes made by him, to the plaintiff, as his executor. But it was admitted, that the plaintiff could prove, if it was competent for him so to do, that the testator stated to one Baldwin, who was named as his executor, after the will was made, that there never was any agreement made with his wife in relation to the money, either before or after marriage.

On April 3, 1837, the testator died, having by his will devised to the defendant the use and improvement of his real estate in Shrewsbury, for life or so long as she should remain his widow, and also certain personal property, in lieu of her dower. The will further set forth, that these provisions were made upon the condition, that the defendant should make no claim to any property as her own, in her own right, out of the

Phelps<br><i>v.</i><br>Phelps.

testator's estate, but should consider and allow all property which she had usually called and considered as her own private estate, to be distributed as the other parts of the testator's property. The defendant had no knowledge of the will until after the testator's death.

The defendant continued to occupy a part or all of the house after the death of the testator, but never set up any claim of right thereto. In the spring of 1837 one Bemis asked the defendant, if she wished to let the place, and she replied, that she should like to have a family come into the house. He then inquired of her what the rent would be, but she said that she did not know, and that she would leave it to men, how much he should pay. Under this permission and agreement he moved into the house on June 1, 1837, and occupied a portion thereof for five months, but without paying rent to any one. While Bemis lived in the house, he asked the plaintiff to whom he should pay rent, and the plaintiff replied, that "it would be as well to let it lie ; " and when he left the house, he also spoke to the defendant about paying the rent ; but she said, that it was in the law and she did not know to whom it was to be paid.

Besides the property claimed by the defendant, the testator left more personal estate than was sufficient to pay his debts and pecuniary legacies.

After the payment of the money to the defendant by Howe, but before the commencement of this action, the plaintiff demanded of her the money and notes which were in her hands at the time of the testator's death, and also the money which had been received on such notes after his decease ; but the defendant refused to pay over or deliver the same to him.

The plaintiff was to be nonsuited or the defendant to be defaulted, as the Court should determine.

*Washburn*, for the plaintiff, to the point, that the defendant elected to accept the provision made for her in the will, by continuing to occupy the house and leasing a portion thereof to a stranger, and that she could not make a second election, cited Clancey, 248 ; and to the point, that the money claimed belonged to the testator, and that upon his death, the right thereto passed to his executor, Clancey, 3 ; *Clapp* v. *Stoughton*, 10

Pick. 469 ; *Commonwealth* v. *Manley*, 12 Pick. 173 ; *Wash-*
*burn* v. *Hale*, 10 Pick. 429 ; *Kenny* v. *Udall*, 5 Johns. Ch.
R. 480.

*Merrick* and *Pratt*, for the defendant, cited *Stanwood* v.
*Stanwood*, 17 Mass. R. 57 ; *Nash* v. *Nash*, 2 Madd. R. 133 ;
*Draper* v. *Jackson*, 16 Mass. R. 480 ; *Cecil* v. *Juxon*, 1 Atk.
278 ; *Slanning* v. *Style*, 3 P. Wms. 337 ; *Nunn* v. *Wils-*
*more*, 8 T. R. 521.

Dewey J. delivered the opinion of the Court. The general
rule of law is undoubtedly, that the husband has the absolute
authority and control over the choses in action accruing to the
wife during coverture.   He may collect them and appropriate
the avails to his own use ; and it is in his power to release and
discharge them.   The proceeds of them, when received by
him, become absolutely his, and the right of the wife by sur
vivorship would in such a case be lost.

While this general principle is well settled, still there have
been various cases where, from the acts of the husband, those
interests which would otherwise have vested absolutely in him,
have been held to survive to the wife.

The doctrine that a *feme covert* has no civil capacity, must be
taken with many qualifications ; and although she cannot during
coverture act separately from her husband, yet with his consent
she may become a party as grantee to a deed, or obligee to a
bond, or payee to a promissory note ; and when thus made a
party, new rights may be acquired by her.   This may be ef-
fected by a contract made jointly with the husband and wife,
or it may be by a contract with her alone ; and in either case,
upon the survivorship of the wife, these interests, although ac·
cruing during coverture, will vest in her.

The general doctrine of the capability of a feme covert thus
to become a party to a contract, and of the extent to which
courts of law will protect her interest, is much discussed in the
case of *Draper* v. *Jackson*, 16 Mass. R. 480.   It was a case
of a controverted title to a note and mortgage made to the hus-
band and wife during coverture, and the husband having de
ceased, the question was whether the administrator of the
husband, or the surviving wife, had the legal right to the
property in them.   It was urged in this case, that the note and

mortgage being thus executed during coverture, the wife was incapable of contracting and the property vested absolutely in the husband. The question was fully considered and a very elaborate opinion delivered by *Jackson* J., sustaining the doctrine, that the husband might by his act authorize a contract in their joint names, and that such a contract would enure to the benefit of the wife, if she survived the husband.

But a case more analogous to the present, is that of *Stanwood* v. *Stanwood*, 17 Mass. R. 57. This case, it must be admitted, was settled on very liberal principles as regards the rights of the wife ; and carries, as far as we should be inclined to go, the doctrine as to the effect of the husband's acts and declarations in qualifying and restricting what would otherwise clearly have been considered as a reducing to possession of property accruing in the right of his wife.

The facts in that case were briefly these. Mrs. Stanwood at the time of her marriage, held in her own right nine shares in the Newburyport Bank, the charter of which having subsequently expired, her husband subscribed in her name for five shares in a new bank to which the holders of shares in the old bank were permitted to subscribe to a limited extent, leaving four hundred dollars due to Mrs. Stanwood for the remainder of her shares. This amount thus due was entered in the books of the bank to the credit of the husband as a deposit by him, and a book stating the deposit was delivered to him ; and thus it remained at the time of his death. This money, Mrs. Stanwood claimed, had never vested in her husband. To rebut the inference of reduction to possession by the husband, arising from the facts above stated, it was shown that at the time when the money was placed to the credit of the husband in the books of the bank, he stated that it was not his money but his wife's, that he did not want the money, but would leave it in the bank for her. The Court held, that there was no reduction of the property to the possession of the husband, inasmuch as he disaffirmed at the time any such purpose.

Testing the present case by the doctrine contained in *Stanwood* v. *Stanwood*, the result to which we shall arrive is very obvious.

The declarations of the husband assenting to the making this

note payable to his wife, are full and explicit. The case finds, that it was done in pursuance of his wishes, that she might be the sole and exclusive owner of it, and that the husband frequently declared, that it was not his intention to receive any part of the principal or interest to his own use. Here was then an assent on the part of the husband, that the wife should become the payee of this note, and an explicit disaffirmance of any purpose of reducing to his possession the money secured for the accruing interest, which was the consideration of the note, the avails of which are now demanded by his executor. These acts and declarations were, in our opinion, sufficient to authorize the making the note to the wife as payee, and to secure to her the right to hold the same to her own benefit in case she survived her husband. Nor is the effect of them to be controlled by the will of the husband making the devise therein to his wife conditional upon her making no claim for such property as had heretofore been considered as belonging to her, unless the provisions of the will are accepted by the wife. His declarations to a third person, that there was no agreement with his wife as to her interest in this note, are equally unavailing to defeat her rights as survivor. Having by his direct assent permitted the note to be taken in her name, and having abstained from exercising any acts of control over it, during his lifetime, his naked declaration to a stranger, denying any interest in his wife, will not affect the legal rights of the parties. While the husband was living, he had the full power to collect and appropriate to his own use, this note, as well as all other choses in action belonging to his wife, and this notwithstanding he had permitted her to take the note in her name and with the avowed purpose that she should hold it as her separate estate ; but if this power thus to change the property by reducing it to possession, was not exercised by the husband while alive, it does not devolve upon his personal representative. The right of the wife as survivor at once attaches, if the husband dies without reducing the property to his possession.

It was further contended on the part of the plaintiff, that the defendant had relinquished her right to hold this note, by her acceptance of the devise in the will of her husband. No ex-

press assent to the terms of the will or acceptance of the de-
vise by her is shown, but it is said to be properly inferred from
her occupation of and exercising acts of ownership as to the
dwellinghouse of her late husband, the use of which was de-
vised to her during her life. We do not think the facts dis-
closed warrant the inference, that she was acting under the
will. The remaining in the dwellinghouse and permitting
another person to occupy a portion of it for a short time, are
acts too equivocal in their character to authorize the conclu-
sion, which the plaintiff would draw from them. Under the
provisions of the Revised Stat. *c.* 60, § 6, she might by her
right of dower, independent of the will, continue to occupy the
dwellinghouse with the heirs of her husband, so long as the
heirs did not object. In questions of this kind great liberality
is exercised in favor of the widow in the construction to be
put upon her acts. *Wake* v. *Wake*, 1 Ves. jun. 235.

Upon the whole matter, the Court are of opinion, that the
property in the note vested in the defendant upon the death of
her husband, and that she is entitled to retain the avails of it
to her own use.

MORTON J. dissented on one point, remarking that in his
opinion the property in question was a chose in action reduced
to possession by the husband ; that the husband, and no one
else, had a right to collect the interest on the notes held by
the wife at the time of the marriage, and that the wife, in re-
ceiving it, acted as his agent, so that in law he received it ;
that if he received it, no act of volition nor declaration on his
part, could preserve the rights of the wife ; that the case of
*Stanwood* v. *Stanwood* was not so strong as the one at bar,
and that even in that case the decision was contrary to the
rules of the common law.

*Plaintiff nonsuit.*