ASA FISK & others *vs.* HENRY W. CUSHMAN & anotne.. HENRY W. CUSHMAN & another *vs.* ASA FISK & others.

In order to give effect to the contract of a third person in favor of a married wo· man, or to enable her to hold bank shares transferred to her in her own right, so that such contract or transfer shall enure to her .sole use and benefit, after the decease of the husband, it is only necessary that there should be a clear and distinct act, on the part of the husband, indicative of his assent thereto, and the formal introduction of the wife's name, as the party having the legal interest.

A deposit of money by a husband in a savings bank, in the name and to the credit of his wife, he declaring that the money is hers, and that he wishes it put in her name, and delivering the deposit-book to her, will enure to her sole benefit after his decease, against the heirs and legatees of the husband. So, where a deposit is made by the husband, in the name of the wife, he at the same time keeping a separate deposit account in the same bank in his own name.

Under a bequest by a testator to his wife of a certain sum " to be taken out of such property as she shall think proper," real estate of the testator cannot be transferred to the wife by her merely signifying her election to take it; but personal estate may be so transferred, to be received by the wife at the actual market value thereof, as ascertained by proper and competent judges; and where, upon an appeal to this court, the value of property so taken was found by a jury, the verdict was held to establish the actual value, at which the same was to be received.

Where a husband, at the time of his death, is away from home, attended by his wife, and she does not return home immediately afterwards, she will not be entitled to charge the estate for her support, during the forty days succeeding his decease.

THESE were appeals from a decree of the judge of probate for the county of Franklin, allowing the first account of Henry

W. Cushman and Experience C. Fisk, administrators, with the will annexed, of Elijah Fisk, late of Warwick, deceased.

The testator having appointed his widow, the said Experience C. Fisk, executrix of his will, and she declining to act in that capacity, administration of the estate was committed to her and Henry W. Cushman, as above stated.

The testator left real and personal estate, among which were thirty-three shares in the stock of the Greenfield bank; and besides other legacies, he bequeathed to his wife " the sum of five thousand dollars, to be taken out of such property as she shall think proper."

The administrators, in their account, charged themselves with the amount of real and personal estate, as stated in the inventory, including therein the bank stock at its par value. They also prayed an allowance, among other things, for payments made to the widow, under the bequest to her, namely : " Thirty-three shares in the stock of the Greenfield bank, $3300 ; one undivided half of the home farm, $500 ; one undivided half of the Penniman lot, $275 ; one undivided half of the Harvard meadow, $18 ; cash, $907 ; making in the whole $5000." These several items of stock and real estate were charged in the account at the appraised value. Among the charges against the estate, was one of $15, for the support of the widow forty days after the testator's decease. The ground of this charge was, that the testator was away from home at the time of his death, attended by his wife, and that she received no specific support afterwards, during that time, out of his estate.

The residuary legatees, Asa Fisk and others, objected to the allowance of the account : —

1. Because the administrators had not charged themselves therein with certain deposits in the institutions for savings in Greenfield and Worcester.

2. Because they had disposed of the bank stock at an under value, and had themselves become the purchasers thereof, to be appropriated to the payment of the legacy to the widow.

3. Because they had charged themselves with the real estate, and claimed an allowance of the same towards the payment of a legacy.

4. The legatees also objected, among other things, to the allowance of the charge for the support of the widow.

The judge of probate sustained the second objection, so far as to require the administrators to charge themselves with the bank stock at $106 a share; and the fourth, so far as related to the charge for the support of the widow, which was to be struck out of the accounts. The other objections were dis-allowed.

In regard to the third objection, the judge of probate was of opinion that the widow having the fullest power of choice, out of all the estate, to satisfy the legacy, and having elected to take, and taken possession of all the real estate, in part payment thereof, at the appraised value in the inventory, con-tent with such title, this mode of accounting, though irregular in form, was in the present case substantially right; and that in the absence of all other proof, the appraised value in the inventory might properly be taken as *primâ facie* evi-dence of the value of the real estate so received and ac-counted for.

The administrators appealed from the decree of the judge of probate, allowing their account as above stated : 1st, Be-cause they were ordered thereby to charge themselves for the bank stock at the rate of $106, instead of $100, a share ; and 2d, Because the charge for the support of the widow was dis-allowed.

The residuary legatees appealed from the decree allowing the said account : 1st, Because the administrators had not charged themselves with certain deposits in the institutions for savings in Greenfield and Worcester ; 2d, Because they had charged themselves with the testator's real estate at its appraised value, and claimed an allowance of the same towards the payment of the legacy to the widow; and 3d, Because there was no power or authority given by the will to appro-priate the real estate to the payment of a legacy.

The appeals were tried before *Dewey*, J. The jury found specially, that the value of the bank shares was $103.33 a snare, on the 18th of September, 1848, the date of the charge of the same as paid to the widow; that the value of the Pen-

Fisk & others *v.* Cushman & another.

niman lot was $381.25; and the value of the other parcels the same as stated in the inventory and account.

The cases were thereupon reserved for the consideration of the whole court, upon the facts thus found by the jury, and upon certain evidence relating to the deposits in the savings banks at Greenfield and Worcester, the material parts of which are sufficiently stated in the opinion of the court.

*G. T. Davis,* for the administrators.

*D. Aiken,* for the residuary legatees.

DEWEY, J. Various questions arise upon the appeals taken by the parties to the decree of the judge of probate, upon the allowance of the account of the administrators, with the will annexed, of the estate of Elijah Fisk, who died testate, but whose executrix, named in the will, declined acting in that capacity.

1. The leading and most important question is that which relates to the deposits in the savings banks at Greenfield and Worcester ; whether the same are the property of the estate of Elijah Fisk, and as such to be administered, or whether they are the property exclusively of his widow, Experience C. Fisk.

The principles applicable to cases of this character, so far as they involve the right of a married woman to acquire property during the marriage, and the extent of the interest thus acquired by her, in reference to the rights of the husband and his heirs, have become pretty well settled. A married woman has the legal capacity to receive gifts, and may be the obligee of a bond, or the payee of a promissory note, or receive a transfer of stock in moneyed corporations ; and in all such cases, she may hold the same to her own use, if she survives her husband.

So also she may be such payee of a note, obligee of a bond, or a depositor to whose credit money is deposited in a savings bank, when the consideration for such note, bond, or deposit certificate, may have proceeded wholly from the husband ; and in such case, as regards the heirs at law of her husband, she may hold the same to her sole use, if she survives her husband. As regards the creditors of the husband, the rule is entirely different, and all such gifts proceeding from the husband are

invalid as against the creditors, if they are required for the pay-ment of debts.

In many of the reported cases, the consideration for the promise to the wife, or for the investment for her benefit, was property previously belonging to the wife in her own right, or property acquired by gift from other sources than her husband; and the great question was as to the capacity of a married woman to be a party to such contracts, or bailments; it being contended, on the part of those who represented the estate of the husband, that all contracts and engagements entered into by third persons with a married woman were contracts solely with the husband, and enured to the benefit of his estate, upon his decease.    But the court held otherwise.    In later cases, it has also been held, that when no rights of creditors intervened, a promise by a third person to pay her money, or other en-gagement for her benefit, upon a consideration moving from the husband, was a good promise to the wife, and available for her sole use, if she survived her husband, and he had not in his lifetime reduced the same to possession, and thus dis-charged the promise.

The leading case of *Draper* v. *Jackson*, 16 Mass. 480, is a direct authority, as to the capacity of a married woman to become a party to a contract, with the assent of her husband, having for its object the securing to herself the avails of pro-perty held in her own right.    This case was followed by that of *Stanwood* v. *Stanwood*, 17 Mass. 57, where an investment by the husband for the benefit of his wife was sustained in her behalf as against his administrator.

It would seem, that independent of the recent statutes, which have very much extended the capacity of a married woman to take and hold property for her separate use, the effect of our decisions is such, that all contracts made with her during the marriage, to pay her money, or written acknow-ledgments of indebtedness to her as bailee or otherwise, if en-tered into with the full assent of her husband, are contracts that survive to the wife, to her sole use, as against the heirs of the husband; and the question to be decided in each case is, whether the husband has by proper acts signified his pur-pose to that effect.

Thus, in the case of *Draper* v. *Jackson*, above cited, it was said by the court, that where the husband takes a security for a debt due from a third person in the joint names of himself and wife, (as was the case there,) " he is understood to assent and intend, that she shall have some peculiar benefit from it;" and the wife was accordingly allowed to hold the debt to her own use, she having survived her husband. In the case of *Stanwood* v. *Stanwood*, also, full force and effect was given to the declared purpose of the husband to hold certain property, the income of property, formerly held by her, for the separate account of the wife; and although deposited in his own name, it was held sufficiently reserved for her benefit, by his unqualified declaration that it was hers and left for her sole use. In the case of *Phelps* v. *Phelps*, 20 Pick. 556, a like view of the question was taken by the court, in favor of the wife.

It is true, that in these cases, the original consideration for the indebtedness, or for the stock or deposits, was from the property of the wife, either directly or remotely. But in a later case, *Adams* v. *Brackett*, 5 Met. 280, where such evidence was wanting; as to the source from which the funds were procured, that were invested for the wife, and where the court assumed that the husband had himself furnished the same; yet full effect was given to an investment by the husband for his wife, in her name, of certain bank shares. The intention of the husband to give the same to the wife, and the act of giving, were said to be complete, and the gift was supported as against the claims of the heirs at law. That case is quite to the point, and if sound, will furnish a sufficient precedent for the present case.

In the case of *Ames* v. *Chew*, 5 Met. 320, 323, where a question arose as to a deposit in a savings bank, in the name of the wife, and whether the same was available to her as against the creditors of her husband; while the court held it invalid as against the creditors, yet it was said, that " such investment in her name by the consent of her husband might bar the heirs of the husband, and might confer upon her all the legal rights of survivorship, as regards the claim of such heirs."

All that is required, therefore, to give effect to a contract by

a third person to pay money to a married woman, or to hold it as her bailee, or to vest in her an interest as owner of bank shares, that will enure to her sole benefit, as against the heirs of her husband, is a clear and distinct act on the part of the husband, indicative of his assent, and the formal introduction of her name, as the party having the legal interest in the property.

The only further inquiry is, whether the evidence in the present case would have authorized the jury to find such clear and distinct acts of the husband, indicative of his purpose to deposit this money for the separate use of the wife. As to the deposit in the bank at Worcester, in the name of his wife, the testimony is very direct and full. The money was sent to the bank by the husband, he delivering the same to an agent, and requesting the deposit to be made for his wife. He said it was her money, and he wished it put in her name; and a book containing the account of the deposit was brought back, and was delivered by him to his wife. As to this deposit, there can therefore be no doubt, that it was designed by the husband as a deposit for the use of his wife.

The deposit in the bank at Greenfield is of a character less distinctly marked. It was however a deposit made directly by the husband in the name and to the credit of his wife. It was a deposit thus made by the husband, at a time when he had and kept a separate deposit account, in his own name. This departure from the usual mode of depositing in his own name is very significant of some purpose beyond that of an investment for himself, and looks very much, to use the language of the court in the case of *Draper* v. *Jackson*, 16 Mass. 480, as though he intended that she should " have some peculiar benefit from it."

There is evidence that the wife had property at the time of the marriage, which might furnish a reason for such deposit, if a reason was required. For some time after the marriage, there was apparently something like separate accounts and money dealings, kept by the husband and wife, though this was said to have been abandoned afterwards. However that may be, there had been funds derived from her by the husband,

which might have led to this deposit by the husband. But the great and leading fact, which must control the case, on this point, is, that a voluntary deposit of money was made by the husband in the name and to the credit of his wife; he keeping at the same time a deposit account in his own name, in which other moneys were credited to his account.

The deposit in the name of the wife, so far as now claimed by her, had never been withdrawn or in any way transferred. This deposit, thus made, is to be explained upon some reasonable hypothesis. The only one set up is, that the Rev. Sts. *c.* 36, § 77, forbid any depositor from having on deposit more than one thousand dollars in his own name at any one time. An examination into the details of these accounts will show, that this reason could not have been the true cause, at the period of making most of the deposits in the name of the wife, although it may have been so on some occasions.

.We think the acts of the husband, as shown in relation to the deposit in the savings bank at Greenfield, are such as clearly indicate an appropriation by way of gift, or otherwise, of so much money for the benefit of his wife; that the deposit, like any debt due to her, might have been, under his rights at common law, collected and discharged by the husband while living, if he had been so disposed; but not having done so, upon his death, it survives to the wife as her separate property, as against the heirs of her husband.

The result is, therefore, that the administrators are not properly chargeable with the deposits in the name of Experience C. Fisk in the savings banks at Worcester and Greenfield.

2. A further question arises upon that part of the will, which gives the wife a legacy of five thousand dollars, and provides that the same " may be taken out of such property as she shall think proper." The doubt here raised is as to the kind of property that she may thus take, and the mode of fixing the value thereof. The court are clearly of opinion, that no real estate of the testator is to be transferred to the legatee, under this provision, by her merely signifying her election to take certain real estate therefor. The title has either passed to the heirs at law or to the residuary devisees, liable to be

defeated by a sale for the payment of debts or legacies. But real estate is not transferable, in the way personal property might be, in payment of a legacy, by mere election of the legatee. As to the personal estate, it may be so transferred, and it was competent, without license, to transfer the same to the wife in part payment of her legacy, under the provisions of the will. As to the price at which she is to receive the bank shares, it must be the fair market value thereof at the time of such transfer; not necessarily the inventory valuation, as that was made for other purposes, and between other parties, to some extent; but the actual value, to be found by competent and proper judges. In the present case, the value has been found by the jury, and the sum thus found is the sum for which the bank shares are to be taken by the legatee.

3. The judge of probate properly disallowed the charge by the administrators of $15, for the support of the widow for forty days, after the death of the testator, under the provisions of Rev. Sts. c. 60, § 16, which are, that "A widow may remain in the house of her husband forty days after his death, without being chargeable therefor; and in the mean time she shall have her reasonable sustenance out of his estate." The case of the widow was not one within the provisions of this statute, or in which such allowance could properly be made.

The decree of the judge of probate must be reversed, so far as is necessary to conform to the above opinion, and in other respects affirmed; and the case be remanded to the court of probate for further proceedings.