RACHEL MOTLEY *versus* SAWYER.

Under the recent statutes, relating to the property of married women, the property in a negotiable note may pass from the husband to the wife during coverture, by his indorsement and delivery of it to her.

After a dissolution of the marriage, such indorsee may maintain suit upon the note in her own name.

ON EXCEPTIONS from *Nisi Prius*, WELLS, J. presiding

ASSUMPSIT upon a promissory note, given by the defendant, in March, 1847, to Nathaniel Motley and by him indorsed to the plaintiff.

The plaintiff was the wife of said Nathaniel until May, 1850, at which time there was a divorce *a vinculo*, for the reason (among other things,) that he had deserted her for many years. There was evidence tending to show that in 1848, the note was in her possession, unindorsed, and that it was also in her possession in 1850, prior to the divorce, with the payee's name, written by him upon the back of it.

The defendant contended, that if the plaintiff had no other title to the note than by the indorsement of the husband during coverture, the action could not be maintained.

The Judge instructed the jury, *that*, ordinarily, possession of a negotiable note, indorsed by the payee, was *prima facie* evidence of a title to it, and would enable the holder to maintain a suit thereon; *that* this evidence might be repelled; *that* if the note was given to the plaintiff by said Nathaniel *during her coverture,* and was indorsed by him before the dissolution of the marriage, no title passed to her; *that* the note still remained the property of said Nathaniel, and the plaintiff could not maintain this action, without the consent of said Nathaniel.

Other grounds of defence were also set up, but the jury were instructed that, if the plaintiff had no title to the note, their verdict must be for the defendant, and they need not examine the other grounds; and they were instructed to answer (if their verdict should be for the defendant,) whether or not, they found that the plaintiff had a title to the note,

upon the foregoing principles. The jury found a verdict for the defendant, and replied that the plaintiff had not a title to the note.

The plaintiff filed exceptions to the ruling.

*Evans*, for the plaintiff.

*Morrell*, for the defendant.

Possession alone of the note by the plaintiff is not sufficient to entitle her to maintain the suit. No consideration is shown, no sufficient ratification, no recognition of the title since the divorce. The indorsement did not change the title. The presumption, which ordinarily arises from possession, is repelled by the fact, that she was not of legal capacity to take title.

The husband could not transfer the note to her directly, they being in law but one person. *Martin* v. *Martin*, 1 Greenl. 395; 2 Kent's Com. 129.

The legal interest must be shown in the plaintiff. *Bradford* v. *Bucknam*, 12 Maine, 15. The jury found, in answer to a specific inquiry, that plaintiff *had no title to the note*, that is, the indorsement by the husband was made during coverture. There was abundant proof to authorize this finding, that the note was Motley's, and that he left it as worthless, or by accident.

HOWARD, J. — By the common law, a man could not convey an estate by deed to his wife, nor could she acquire or possess personal property independent of him. But in equity, a married woman may take, and hold property by devise, against her husband's creditors in bankruptcy. *Bennett* v. *Davis*, 2 P. Wms. 316; and may acquire separate property when he has deserted her, which will not be subject to his disposition, *Cecil* v. *Juxon*, 1 Atk. 278; so her separate interest in property by agreement with him, will be sustained. *Slanning* v. *Style*, 3 P. Wms. 338; and a gift from her husband to herself will be supported. *Lucas* v. *Lucas*, 1 Atk. 270.

o

These principles of equity are becoming more familiar to Courts of common law, by adoption, and by statute provisions. They may seem like invasions upon its ancient realm, yet they do no dishonor to the general character of the common law ; but rather tend to soften and bend its honest and rigid rules to the demands of the present state of social and domestic relations. *Draper* v. *Jackson,* 16 Mass. 480 ; *Stanwood* v. *Stanwood,* 17 Mass. 57 ; *Phelps* v. *Phelps,* 20 Pick. 556 ; *Adams* v. *Brackett,* 5 Met. 280 ; Stat. 3 & 4, William 4, c. 74 ; 2 Kent. Com. 163.

By the statutes of this State, (1844, c. 117, and 1847, c. 27,) a married woman may become seized and possessed of property, real and personal, by direct bequest, demise, gift, purchase, or distribution, as her own property, exempt from the debts or contracts of her husband ; and may take property from him by gift, directly, subject only to the claims of his creditors, with prior contracted debts, who might thereby be defrauded.

The husband of the plaintiff could have transferred the note in suit, to her by indorsement, during coverture, and thus have passed the title to her, as against the maker, the defendant. After the divorce she could maintain an action upon it in her own name. By the provision of the statute of February 23, 1852, a married woman "seized and possessed of property, real and personal, has power to lease, sell, convey and dispose of the same, and to execute all papers necessary thereto, in her own name, as if she were unmarried." But this act cannot apply to the case at bar, the suit having been commenced before its passage.

The instructions that if the note in suit was given to the plaintiff by her husband during coverture, and was indorsed by him before the dissolution of the marriage, no title passed to her, and that the note still remained his property, were in conflict with the statutes referred to, and cannot be sustained. But, aside from the statutes, and even if the old common law doctrines remained unqualified, her title to the note might have been confirmed by the husband, after the divorce,

although the indorsement and transfer had been made to her before, and thus she might have acquired the property, and might maintain the action.         *Exceptions sustained.*

SHEPLEY, C. J., and TENNEY, RICE and APPLETON, J. J., concurred.