### DAN HILL, Administrator, *vs.* WASHINGTON HUNT.

Money received by an agent of the wife with her husband's consent for her chose in action, and never reduced to possession by the husband, may be recovered from such agent by the administrator of the wife; and the husband's stipulations in an antenupt'al contract, and in a mutual agreement of separation, are admissible to disprove any such reduction to possession.

An agent, who, having received money under an agreement to invest it forthwith, fraudu lently converts it to his own use, is liable for interest from the time of the receipt, and without previous demand.

ACTION OF CONTRACT by the administrator of Katharine Thompson for money had and received. At the trial in the court of common pleas the following facts were proved:

In 1802 the said Katharine married Elisha Thompson. Just before the marriage the parties entered into an agreement, reciting the contemplated marriage, and containing these stipulations:

" I the said Thompson on my part agree and promise the said Katharine that, if said marriage shall take place, she shall have the control and disposal of all the property she now possesses, and that she may do with the same at all times after the said marriage as she may think proper and fit; and that I and my heirs will make good to her all damages to any of the goods and effects she may bring to me, at my decease, and she shall have a right to take them away and dispose of the same to her own use and benefit in case she shall survive me, and if she should not survive me, the same shall go to her heirs or as she may dispose of the same by will.

" And I the said Katharine Taft on my part promise and agree that, if said marriage shall take effect, I will relinquish all my right, title and interest to all the estate he the said Thomp- son owns and possesses, and will acquit his heirs from all claim and demand I might have on the same in case he should not survive me; excepting however what I carry to him as above mentioned."

The parties lived together till 1805, when they finally sep-

arated, and the husband made a bond to Sweeting Taft, condi·
tioned that " the said Elisha Thompson shall give up to the said
Katharine on demand all the household furniture and other
property that now remains, which she at any time carried to
him ; and shall permit the said Katharine to collect what secu-
rities she may have against people by making use of his name
when necessary, and convert the same to her own proper use
and benefit ; " and Taft made a bond to the husband, condi-
tioned to save him and his estate " harmless against any expense
or account of Katharine Thompson for her maintenance or on
her claiming dower or thirds in said Elisha Thompson's estate."
The husband, from the time of the antenuptial agreement until
his death, was seised of real estate. Katharine Thompson died
in 1836. Her husband died in 1843, when administration was
taken out on his estate by Peter Thompson, who is now living,
and has never relinquished that office. In 1852 the plaintiff was
appointed administrator of the wife.

The plaintiff then offered to show that at the time of the
marriage and of the separation Katharine Thompson was the
holder of certain promissory notes payable to her, and of some
other articles of personal property ; that after the separation,
with the consent of her husband, the notes were cancelled and
others made payable to Daniel Farnum, and her other property
also invested in notes payable to Farnum ; that Farnum acted
as her business agent and trustee, receiving, collecting and paying
out her moneys under her sole direction, without the interfer-
ence and with the consent of her husband ; and that before
her death the defendant became her business agent instead of
Farnum, and conducted her business in a similar manner,
receiving moneys for her and investing them in notes payable
to himself, but recognized and treated by the parties as her
property, and with an agreement that the proceeds of the notes
should be held by him to her use.

The plaintiff further offered to show that the defendant had
never paid over the proceeds of some of these notes ; and that,
at the death of said Katharine, he took possession of all her
effects, and had ever since retained possession thereof, and that

her husband in his lifetime, and his administrator since his de-
cease, had made no claim to her property, and never taken out
administration upon her estate ; and that from her death to the
time of the appointment of the plaintiff there had been a fraud-
ulent concealment by the defendant of the cause of action de-
clared on.

*Mellen,* C. J. ruled that on the foregoing facts the action could
not be maintained, and directed a verdict for the defendant,
which was returned, and the plaintiff alleged exceptions.

*C. Devens, Jr. & G. F. Hoar,* for the plaintiff.

*C. Allen,* for the defendant. 1. Any payment received on
notes which belonged to Katharine Thompson was the money
of the husband, and could have been demanded by him, and
upon her death became his without taking out letters of admin-
istration. *Shuttlesworth* v. *Noyes,* 8 Mass. 229. *Legg* v. *Legg,*
8 Mass. 99. *Russell* v. *Brooks,* 7 Pick. 65. *Commonwealth* v.
*Manley,* 12 Pick. 173. *Washburn* v. *Hale,* 10 Pick. 429. *God-
dard* v. *Johnson,* 14 Pick. 352. *Hapgood* v. *Houghton,* 22 Pick.
480. *Sutton* v. *Warren,* 10 Met. 451. 1 Bright on Husb. &
Wife, 34. Co. Lit. 351 *b.*

2. The antenuptial contract was void, because it was to
be performed in part during the coverture, and because it was
without consideration. The supposed consideration was a
release of right of dower, but as no freehold estate was settled
on the wife, the contract did not bar dower. *Gage* v. *Acton,* 1
Salk. 325. 1 Bright on Husb. & Wife, 18. *Gibson* v. *Gibson,*
15 Mass. 106. *Hastings* v. *Dickinson,* 7 Mass. 153.

3. The memorandum of an agreement of separation did not
change the rights of the parties. *Ames* v. *Chew,* 5 Met. 320.

DEWEY, J.* We have not found it necessary to decide to
what precise extent the rights of Katharine Thompson and her
husband Elisha Thompson would have been affected, during the
continuance of the marriage relation between them, by the ante-
nuptial articles entered into by the respective parties, in refer-
ence to the property which Katharine held in her own right

---

* THOMAS, J. did not sit in this case.

before and at the time of her marriage. The case has been argued on the part of the defendant mainly upon grounds which would have been more applicable to questions of the right of the husband, or his creditors, to appropriate Katharine Thompson's personal estate to the use of the husband, or in discharge of his debts. But the real inquiry here is as to the right of the administrator of Elisha Thompson to demand and recover choses in action, and moneys realized therefrom in the hands of an agent, who received them from Katharine Thompson in trust for her sole use, with the assent of her late husband. It is to be remarked that the question is not here raised by the administrator of Elisha Thompson. No claim to these choses in action, or their proceeds, has ever been put forth by such administrator since his appointment, which took place in 1843. The present defendant is the party alleged to have received these funds directly from Katharine Thompson. He has the right however to raise the question to what party he is to be held to account.

The first inquiry is, whether the husband ever actually reduced these choses in action, held by the wife at the time of the marriage, to possession, by virtue of any marital rights, supposing such to have existed; for the husband being now dead, upon his decease, if the property had not already been reduced to possession and become absolutely his, his administrator could not by any acts of his change the rights of the respective parties. In aid of this inquiry, it is proper to refer to any acts of the husband, indicative of his purpose to permit these funds to continue to be the separate property of the wife. For this purpose we may look at the contract or stipulations of the husband prior to the marriage, to see what he proposed to do; and that irrespectively of the question whether he was legally bound to carry his promise into effect. We find that stipulation on his part to have been, " that she shall have the control and disposal of all the property she now possesses, and that she may do with the same at all times after the said marriage as she may think proper." The facts in the case show no interference by him with her property from 1802 to 1805, the period during which they lived together. Upon a mutual separation agreed upon by

the parties in 1805, it was directly stipulated by the husband in a sealed contract made with a third party, for the benefit of the wife, that he should permit his wife to use his name to collect whatever securities she might have, and to convert the same to her own proper use and benefit; the husband receiving from such third party a bond to save him and his estate harmless against any expense for her maintenance, or against her claiming dower in his estate.

Here we find a direct avowal on the part of the husband that he would not interfere with her property in these notes, but the same should continue to be held by her to her sole and separate use. This promise was literally fulfilled on his part. Neither during her lifetime, which extended to 1836, nor during his own, extending to 1843, did he do any act by way of asserting any right over these funds. The lifetime of the husband therefore passed away without reducing the same to his possession. His administrator has not attempted to exercise any control over them.

The case upon these facts is therefore most obviously one where the husband elected to treat the property as hers, as long as the coverture existed. It is a much stronger case than those familiarly known to us, where the husband had, by his declarations and acts, created a fund for the separate use of his wife, or allowed her to continue to enjoy as her separate estate funds accruing from property that she had at the time of the marriage, or under some subsequent devise or descent of estate to her, as was held in *Draper* v. *Jackson*, 16 Mass. 480, *Stanwood* v. *Stanwood*, 17 Mass. 57, and *Fisk* v. *Cushman*, 6 Cush. 20. The court are of opinion that this action was properly instituted in the name of the administrator of Katharine Thompson, and that the defendant may be properly held to account to her legal representatives for any liabilities arising from his holding funds of hers, which had thus continued to be held as her separate property.           *Exceptions sustained.*

Upon a new trial in the court of common pleas at December term 1857, it appeared that Hunt, who was an agent of the

plaintiff's intestate, had received money from her to invest forthwith; but that instead thereof he had fraudulently converted it to his own use; and that he had kept himself concealed, so that the plaintiff had been unable to make any demand on him. The defendant contended that this action could not be maintained without proof of a previous demand; and, if it could, that interest should be allowed only from the date of the writ. But *Briggs*, J. ruled that the action would lie without a previous demand, and that interest might be recovered from the time when Hunt received the money. The defendant alleged exceptions, which were argued at October term 1858, and

*Overruled by this court.*