Brown vs. The City of Baraboo.

BROWN, Appellant, vs. THE CITY OF BARABOO, Respondent.

*March 12 — April 3, 1895.*

*Descent: Next of kin: Husband and wife: Tenants in common.*

Under Terr. Stats. of 1839, p. 184, sec. 38 (providing that the land of a person dying intestate and without children "shall descend equally to the next of kin in equal degree, and those who repre-sent them, computing by the rules of the civil law"), the father and mother of the deceased, if living, were the next of kin, and the land descended to them equally as tenants in common, and upon the death of the mother her moiety descended to her heirs.

APPEAL from a judgment of the circuit court for Sauk county: R. G. SIEBECKER, Circuit Judge. *Reversed.*

This is an action of ejectment for the recovery of the un-divided four-sevenths of an undivided half of a certain par-cel of land in the city of Baraboo. George W. Brown died intestate, seised of the entirety of the premises, December 15, 1847, and without any children. Both his father, Chaun-cey Brown, and his mother, Clarissa Brown, survived him, and the latter predeceased her husband, dying intestate February 26, 1854. The plaintiff, also a son of the said Chauncey and Clarissa Brown, claims the interest in the premises for which he sues, as an heir of his deceased mother and as grantee of the interest of three others of her heirs. Having produced evidence to show that he was the owner of four sevenths of the interest in the premises, if any, of which his mother died seised, he claimed that upon the death of George W. Brown intestate the entirety of the premises descended equally to his said father and mother, as his next of kin, computing by the rules of the civil law. After the plaintiff had rested his case the court gave judg-ment of nonsuit against the plaintiff, upon the ground that George W. Brown's mother, under whom alone the plaintiff claimed title, took no interest whatever in the premises, and

that his father inherited the entirety. From this judgment. the plaintiff appealed.

For the appellant there was a brief by *William Brown,* *Bentley & Bentley,* and *G. Stevens,* and oral argument by *Mr. Brown.*

For the respondent the cause was submitted on the brief of *R. D. Evans.* He contended, *inter alia,* that secs. 38, 39,. pp. 184, 185, Terr. Stats. of 1839, were substantially taken from the English statutes of distribution, 22 and 23 Car. II,. ch. 10; 1 Jac. II, ch. 17. Schouler, Executors, § 495; 2 Kent, Comm. 426, and notes. They were adopted directly from Massachusetts. *Westcott v. Miller,* 42 Wis. 454. Under the English statutes, if an intestate left no widow nor lineal issue, the *father* took the whole of the personal property. Schouler, Executors, § 501; Williams, Executors (6th Am. ed.),. 1506; *Blackborough v. Davis,* 1 P. Wms. 51. The mother came next in order, but had to share with brothers and sisters of the deceased, if there were such. Schouler, Executors, § 501; Williams, Executors, 1506–1508. This construction, both as to personal and real estate, had been uniformly. followed in Massachusetts, prior to the enactment of the statute here. The mother took only as. *widowed* mother, and then the surviving brothers and sisters took equally with her. *Sheffield v. Lovering,* 12 Mass. 491; *Westcott v.. Miller,* 42 Wis. 454. The old doctrine of the common law. forbade that mother and father should have equal title as parents. Schouler, Executors, §§ 102, 103; Williams, Executors, 423; *Blackborough v. Davis,* 1 P. Wms. 51. Ch. 63,. R. S. 1849, provided in direct terms that in case an intestate should leave no issue nor widow his estate should descend. to his *father.* This provision remained substantially unchanged until the enactment of ch. 121, Laws of 1870, when. *parents* were substituted for the father. The change effected. in 1870 is in harmony with modern tendencies, but the Revised Statutes of 1849 did but adopt and confirm, in clear

and explicit language, the legal construction which had been given to the Territorial Statutes, and the practice which had prevailed here from the occupancy of the country. Prior to the enactment of modern statutes, by judicial construction, the mother was not included in the term "next of kin," the father being alive. Cent. Dict. NEXT OF KIN; 13 Ency. Brit. 198, INHERITANCE; Sweet, Law Dict. 555, NEXT OF KIN; *Blackborough v. Davis*, 1 P. Wms. 48; Robertson, Succession, 10 Law Lib. 182, par. 8; 4 Burns Eccl. Law (9th ed.), 545; Williams, Executors (4th Am. ed.), 1271. The succession of the father to the whole of the personal estate of a deceased child who left no widow nor descendants, under the English statutes of distribution, needs no further citation of authority. But that statute provided for the distribution of the personal estate of a deceased child "to the next of kin in equal degree." The terms employed are identical with those used in Terr. Stats. 1839. That statute, substantially, with the construction given to it in England, was adopted in Massachusetts and made applicable to real estate as well as to personal property. *Sheffield v. Lovering*, 12 Mass. 490. The statute of Massachusetts, omitting only the provision of a double portion to the eldest son, was adopted by the territorial legislature in the statutes of 1839, with the construction which had been given to its provisions in Massachusetts. *Westcott v. Miller*, 42 Wis. 454. Under the statute there the *father* succeeded to the whole of the estate of his deceased son, when such son left neither widow nor child.

PINNEY, J. 1. It was provided by the statute of descent in force at the time of the death of George W. Brown that "when any person shall die seised of lands, tenements or hereditaments not by him devised, . . . where there are no children of the intestate, the inheritance shall de-

Brown vs. The City of Baraboo.

scend equally to the next of kin in equal degree, and those who represent them, computing by the rules of the civil law." Terr. Stats. 1839, p. 184, § 38. Consanguinity, it is said, is either lineal or collateral. Lineal consanguinity is that which subsists between persons of whom one is descended in a direct line from the other, as between an intestate and his father or grandfather, etc., in the direct ascending line, or between him and his son or grandson, etc., in the direct descending line; and every generation in lineal, direct consanguinity constitutes a different degree, reckoning either upward or downward. This method of computation of degrees of kindred in the direct line obtains as well in the civil and canon law as in the common law. 2 Chit. Bl. *203. The difference in the method of computation of degrees exists only in relation to collateral consanguinity. As George W. Brown left no children, his father and his mother were his next of kin and in the first degree. They stood as such in equal degree; and the statute declared, in substance, that his inheritable property should descend to them equally, as his next of kin. The common-law canon of inheritance, by which males were preferred to females in the same degree, was abrogated by this statute. " It is a general rule that those who take property as a class of persons described, where there is nothing in the law making the appropriation to distinguish their respective rights, take in equal shares." Reeve, Descent, 105, 123; *Knapp v. Windsor*, 6 Cush. 156; *Snow v. Snow*, 111 Mass. 389, 390; *Balch v. Stone*, 149 Mass. 42. The statute leaves no question, but declares in express terms that " the inheritance shall descend equally to the next of kin in equal degree." It is very evident that the real estate in question descended equally to the father and to the mother of the deceased; and as they took by descent, and not by purchase, as by grant or devise, we think that they took as tenants in common and by moieties,

and not by entireties, and therefore that upon the death of the mother her interest did not go to the father, her husband, by right of survivorship.

The creation of an estate in joint tenancy, it is said, "depends on the wording of the deed or devise by which the tenants claim title, for this estate can only arise by purchase or grant,— that is, by the act of the parties,— and never by the mere act of law." · 2 Chit. Bl. 180. By the common law, where an estate is granted to husband and wife, they take by entireties and not by moieties. Neither could sell without the consent of the other, and the survivor took the whole. *Ketchum v. Walsworth*, 5 Wis. 95. This result was upon the ground that the estate was created by act of the parties, and that in such cases husband and wife are but one person in law for the purposes of the grant; but where the estate is created by act of law, as by descent, the rule is otherwise, and they take as tenants in common and by moieties. The father and mother of George W. Brown inherited his estate equally, by reason of the relation of each to him, and not by reason of their relation to each other as husband and wife. The right of each is separate and distinct, and is in no way dependent upon the right of the other.

In *Knapp v. Windsor*, 6 Cush. 157–161, the whole subject is considered, and SHAW, C. J., says: "It appears to us that the analogy between the acquisition of property by operation of law, giving to each individual of a class a share *suo jure*, and a grant giving a certain amount of property to several persons, two of whom are husband and wife [as in that case], and named and designated as such, is very slight. The former has its operation from the provisions of law which are general and unlimited, and look simply at the relation of each to the intestate, and intend to give to each because so related; the other takes its effect from the presumed intent of the grantor or devisor, who has the power to make such gift as he pleases." This case is an exhaustive

and instructive consideration of the subject, and, we think, fully sustains the conclusions at which we have arrived.

We have not been referred to any authority, nor do we know of any, sustaining the position that, where husband and wife take by descent as next of kin, they take by entireties and not by moieties, or that, as between them, the right of survivorship obtains. Many authorities were cited showing that, as to personal estate in such a case, the father and husband would take it, to the exclusion of the mother and wife; but this is because the estate is personal, which, as soon as it is property of the wife, becomes the property of the husband by right of marriage. " It would be idle to distribute to her, when by the very act of distribution it would become the property of the husband. But it is otherwise in the case of real property. This is not his, but belongs to her, and she is as capable of inheriting it as her husband." Reeve, Descent, 123. During coverture he is entitled to the use of her real estate or the rents and profits of it. Subject to this right, she might convey or devise it and it would descend to her heirs.

We hold, therefore, that upon the death of George W. Brown his real estate descended equally to his father and mother, as tenants in common, and that upon her death her moiety descended to her heirs at law. It follows, therefore, that the nonsuit was erroneous.

*By the Court.*— The judgment of the circuit court is reversed, and the cause remanded for a new trial.