WALLACE, Respondent, vs. ST. JOHN and another, Appellants.

*October 24—November 17, 1903.*

*Husband and wife: Joint tenancy: Conveyance by wife.*

Since the enactment of the Revised Statutes of 1878, a conveyance of land running to husband and wife makes them joint tenants, and the wife may convey her interest as if she were unmarried.

APPEAL from a judgment of the circuit court for Milwaukee county: WARREN D. TARRANT, Circuit Judge. *Reversed.*

This is an action to quiet title to the lands described. The trial court found as matters of fact, in effect, that in 1869 the plaintiff, *Joseph C. Wallace,* and one Agnes J. Wallace, since deceased, were married, and continued to be husband and wife and to reside in Milwaukee until December 15, 1901, when Agnes J. Wallace died intestate in Milwaukee; that thereupon the defendant, *Charles W. St. John,* her son by a former marriage, was duly appointed and qualified as administrator of her estate; that Agnes J. Wallace had no children by the plaintiff; that July 17, 1885, the plaintiff purchased from one Leahy, in consideration of $4,000 paid by him, certain land described, and a warranty deed thereof, running to the said *Joseph C.* and Agnes J. Wallace as husband and wife, was on that day duly executed, witnessed, and acknowledged by the said Leahy, and thereupon was on the same day recorded in the register's office,—all of which was done by the direction of the plaintiff; that June 2, 1888, the plaintiff purchased from one Prentiss, in consideration of $8,000, paid by him, certain other real estate described, and a warranty deed thereof, running to *Joseph C.* and Agnes J. Wallace as husband and wife, was on that day duly executed, witnessed, and acknowledged by the said Prentiss, and thereupon was on June 5, 1888, recorded in the register's office; that the plaintiff erected a house upon the first piece of land mentioned, and he and his wife, Agnes J. Wallace, lived in and occupied the same as a homestead.

The court further found that on October 7, 1901, Agnes J. left their home without the knowledge or consent of the plaintiff, and went and lived at a place in Milwaukee provided by her son, the defendant, *Charles W. St. John;* that while living there, and about two months before her death, she commenced an action of divorce against the plaintiff, which was still pending and undetermined at the time of her death; that in the latter part of November, 1901, she voluntarily returned to her home, and remained there until her

death, December 15, 1901; that on the same day the action for divorce was commenced—October 14, 1901—and while she was so living away from the plaintiff, and without his knowledge or consent, she executed, acknowledged, and delivered a deed dated on that day running to the defendant, *Charles W. St. John,* conveying to him an undivided one-half of both parcels of real estate mentioned; for a consideration therein recited to be $7,500, and that said deed was recorded in the register's office on the same day; that the only consideration therefor was a note and mortgage back from *Charles W. St. John* to Agnes J. Wallace, covering the same lands, for $7,500, duly executed, witnessed, and acknowledged, which was recorded on the same day; that the defendant, *Charles W. St. John,* in his individual capacity, has ever since such conveyance to him by his mother claimed to be the owner and holder of such undivided half of the two parcels of real estate mentioned pursuant to such deed, and in his capacity as administrator he claims to be the owner and holder of said note and mortgage of $7,500; that no part of the note has ever been paid.

And as conclusions of law the court found, in effect, that the deed from Leahy to *Joseph C.* and Agnes J. Wallace and the deed from Prentiss to *Joseph C.* and Agnes J. Wallace created in them an estate by the entirety in each of the two parcels of land respectively conveyed to them, and that both of said parcels of real estate were held by them as tenants by the entirety at the time of the execution and delivery of the deed by Agnes J. Wallace to her son, *Charles W. St. John,* and likewise at the time of her death, December 15, 1901; that the deed from Agnes J. Wallace to *Charles W. St. John* conveyed no title to or interest in the two parcels of land mentioned except the life interest of Agnes J. Wallace in the usufruct thereof, and that the mortgage given by *Charles W. St. John* to Agnes J. Wallace created no lien upon the two parcels of land, except upon the life interest of

Agnes J. Wallace in the usufruct of the two parcels of land conveyed by her to *Charles W. St. John,* and that the interest conveyed by the deed and the lien of the mortgage thereon terminated with the death of Agnes J. Wallace, December 15, 1901; that the plaintiff, as the survivor of his wife, Agnes J., is the owner in fee simple of both said parcels of land, and is entitled to judgment in this action adjudging that the deed from Leahy to *Joseph C.* and Agnes J. Wallace, and also the deed from Prentiss to *Joseph C.* and Agnes J. Wallace, respectively conveyed to them an estate by the entirety in each of the two parcels of land, and that both of said parcels of land were held by them as tenants by the entirety at the time of the execution and delivery of the deed by Agnes J. Wallace to *Charles W. St. John,* and likewise at the time of her death, December 15, 1901; also adjudging that all right, title, and interest in and to the land conveyed by the deed from Agnes J. Wallace to *Charles W. St. John,* and likewise the lien upon said lands of the mortgage given by *Charles W. St. John* to Agnes J. Wallace, terminated with the death of Agnes J. Wallace, December 15, 1901; also adjudging that the plaintiff, as the survivor of Agnes J. Wallace, is the owner in fee simple of both of said parcels of land free and clear from the lien of the said mortgage given by *Charles W. St. John* to Agnes J. Wallace, and from any other claim of the defendant, either individually or as administrator of the estate of Agnes J. Wallace, deceased; and also adjudging that *Charles W. St. John* individually and as such administrator be forever barred against having or claiming any right or title to or interest in either of said parcels of land adverse to the plaintiff, and that the plaintiff recover his taxable costs herein against the defendant; and ordered judgment to be entered accordingly. From the judgment entered thereon, accordingly, the defendant, *Charles W. St. John,* individually and as such administrator, appeals.

For the appellants there was a brief by *Quarles, Spence & Quarles,* attorneys, and *Charles Quarles,* of counsel, and oral argument by *Charles Quarles.*

For the respondent there was a brief by *Cary, Upham & Black,* and oral argument by *A. L. Cary.*

CASSODAY, C. J.   There is no conflict in the evidence. The controversy is as to the law applicable to the undisputed facts. For thirteen years the plaintiff and his wife, Agnes J., held the title to all the lands in question by deeds running to them as husband and wife. Two months before her death, the wife, Agnes J., deeded the undivided one-half of all of such lands to the defendant, her son by a former marriage, and took back a mortgage for the purchase price. The defendant claims to be the owner of such undivided one-half of such lands by virtue of that deed, and as administrator he claims to be the owner of the mortgage. This is an action to set aside that deed and mortgage, and to have the unincumbered title to all of such lands adjudged to be in the plaintiff. In support of the plaintiff's claim, his counsel contends, and the trial court held, in effect, that during the thirteen years mentioned the plaintiff and his wife, Agnes J., held the title to all such lands as tenants by the entirety; and hence that the deed from Agnes J. to the defendant and the mortgage back were both null and void, except as to the usufruct of the lands during the two months immediately preceding the death of Agnes J.

The question presented is very important, and may be involved in the title to numerous estates. It has received very careful consideration from every member of this court. It is certainly not free from difficulty. It is not easy to harmonize by construction the statutes applicable, enacted as they were at different times remote from each other, and having different objects. To ascertain the true meaning of such statutes, it seems to be necessary to trace their history

and the rules of the common law which they were designed to modify, as well as the decisions construing such statutes.

In the case of *Ketchum v. Walsworth*, 5 Wis. 95, seemingly relied upon by counsel for the plaintiff, the land was conveyed to the husband and wife in 1846, and the husband died intestate July 22, 1849—more than five months prior to the time when the Revised Statutes of 1849 went into effect. See ch. 157, p. 747, of those statutes. The question there presented was whether the wife, as survivor of her husband, at common law and under the Territorial Statutes of 1839 (p. 178) took the whole estate freed from the debts of her husband; and it was there held, among other things, that she did, and that:

"At common law, where an estate is granted to husband and wife, they take by entireties, and not by moieties. Neither can sell without the consent of the other, and the survivor takes the whole. . . . The words of conveyance which would make two other persons joint tenants would make the husband and wife tenants of the entirety."

Such territorial statute was very different from any section of the statute here involved. 5 Wis. 101, 102. It is there expressly stated that the sections of the Revised Statutes of 1849, here involved, did not apply to that case. Pages 101, 104. It follows that that decision is of no significance here, except as it reiterates certain rules of the common law, about which there can be no serious difference of opinion.

So, in the case of *Brown v. Baraboo*, 90 Wis. 151, 154, 155, 62 N. W. 921, the controversy related to the title of land of which George W. Brown died seised December 15, 1847, and without wife or issue; and it was held that under the territorial statute cited the land descended equally to his father and mother, and that, "as they took by descent, and not by purchase, as by grant or devise, . . . they took as tenants in common and by moieties, and not by entireties, and therefore that upon the death of the mother her interest

did not go to the father, her husband, by right of survivor-ship." That decision furnishes no aid in construing the sections of the statutes here under consideration.

From the time the statutes of 1849 went into effect—January 1, 1850—down to the revision of the statutes of 1878, there were three sections of the statutes contained in chapters on "The Nature and Qualities of Estates in Real Property, and the Alienation Thereof," which were as follows:

"Sec. 43. Estates, in respect to the number and connection of their owners, are divided into estates *in severalty, in joint tenancy, and in common;* the nature and properties of which, respectively, shall continue to be such as are now established by law, except so far as the same may be modified by the provisions of *this chapter.*

"Sec. 44. All grants and devises of lands, made to two or more persons, except as provided in the following section, shall be construed to create estates in common, and not in joint tenancy, unless expressly declared to be in joint tenancy.

"Sec. 45. The preceding section shall not apply to mortgages, nor to devises or grants made in trust, or made to executors, *or to husband and wife."*

Secs. 43, 44, and 45, of ch. 56, R. S. 1849, and of ch. 83, R. S. 1858.

In February, 1850, an act entitled "An act to provide for the protection of married women in the enjoyment of *their own* property," went into effect. Ch. 44, Laws of 1850. That act was incorporated into the first three sections of ch. 95, R. S. 1858, entitled "Of the Rights of Married Women." Such statutes expressly authorized the wife to "receive by inheritance, or by gift, grant, devise, or bequest, from any person *other than her husband,* and hold to her sole and separate use, and convey and devise," etc., "in the same manner and with like effect as if she were unmarried," etc. R. S. 1858, ch. 95, sec. 3. This court held early that the principal object of the act "was to prevent the property of

the wife from being liable for the debts of the husband, and from being sold or controlled by him." *Wooster v. Northrup,* 5 Wis. 245.

Such were the statutes of this state when the case of *Bennett v. Child,* 19 Wis. 362, came before this court for consideration. In that case the plaintiffs held title to eighty acres of land by virtue of a deed running to them as husband and wife, executed May 1, 1854, and the action was to restrain the sheriff from issuing a deed upon the execution sale against the husband alone, and to set aside the sheriff's sale. The plaintiffs obtained judgment in the trial court, and the same was reversed by this court. In the brief of counsel for the defendants in that case it was urged that by the rules of the common law and sections 43, 44, and 45 of ch. 56, R. S. 1849, and of ch. 83, R. S. 1858, above cited, the deed to husband and wife did not create an estate in common, nor in severalty, but a sort of joint tenancy, within the meaning of the first of those sections, technically known at common law as "tenants by the entirety;" that the effect of such deed to husband and wife was not modified or changed by such statutes giving rights to married women. Among the cases cited in support of such contention were cases from Massachusetts holding that "a conveyance to husband and wife in fee creates a joint tenancy, and not a tenancy in common." *Shaw v. Hearsey,* 5 Mass. 521; *Fox v. Fletcher,* 8 Mass. 274. This court took that view of the case, and held, under the sections of the statutes cited, that "lands granted to husband and wife" were "held by them as at common law," and that such statutes giving rights to married women did not apply; and in part overruled the statement contained in the opinion in *Ketchum v. Walsworth,* 5 Wis. 95, to the effect that neither the husband nor wife could, without the consent of the other, alien "any portion or interest" in the estate. And so it was held in that

case that "the husband's interest, or at least his life estate in such lands," was "subject to sale on execution for his debt." See, also, *Smith v. Smith,* 23 Wis. 176, 180.

Such were the statutes of this state and the decisions under them when the Revised Statutes of 1878 went into effect. Did those statutes change the common-law rule so as to authorize the wife to sever such tenancy by conveyance, as in the case at bar? Counsel for the plaintiff contend that "joint tenancies and tenancies by the entirety' are essentially different." But it is well established at common law that the estate created by deed to husband and wife is "essentially a joint tenancy, modified by the common-law doctrine that the husband and wife are one person." 15 Am. & Eng. Ency. of Law (2d ed.) 847, citing numerous cases, among others *Pray v. Stebbins,* 141 Mass. 219, 221, 4 N. E. 824. Thus it is said that:

"A tenancy by entireties created by a conveyance to husband and wife resembles in some respects a joint tenancy. In both tenancies the title and estate are joint, and both have the quality of survivorship. But the estate of joint tenants is divisible, while that of tenants by entireties is indivisible. The former are seised *per my et per tout,* while the latter, as one person in law, are seised *per tout et non per my.* Hence in a joint tenancy either tenant may convey his share to a cotenant or to a stranger, while neither tenant by entireties can convey his or her interest so as to affect the cotenants' joint use of the property during their joint lives, or to defeat the right of survivorship upon the death of either of the cotenants. There may be partition between joint tenants, while there can be none between tenants by entireties." 17 Am. & Eng. Ency. of Law (2d ed.) 652.

The authorities agree that this indivisibility of tenancies by the entirety at common law was in consequence of the *oneness* of husband and wife at common law. 15 Am. & Eng. Ency. of Law (2d ed.) 847. Adjudications cited by counsel

-for the plaintiff are to the same effect. *Stuckey v. Keefe's Ex'rs,* 26 Pa. St. 397, 399; *Diver v. Diver,* 56 Pa. St., 106, 109.

The changes in the statutes by the revision of 1878 necessarily had reference to such rules of the common law, as well as to prior statutes. Secs. 43, 44, and 45 of ch. 56, R. S. 1849, and of ch. 83, R. S. 1858, and quoted above, were copied literally into the Revised Statutes of 1878 as secs. 2067, 2068, and 2069, except that in sec. 2067 the words *"these statutes"* are substituted in place of *"this chapter"* at the end of sec. 43 in the prior statute. The change is significant. The words "this chapter" in such prior statutes were confined to "the nature and qualities of estates in real property, and the alienation thereof," and necessarily excluded ch. 95 of the Revised Statutes of 1858, entitled "Of the Rights of Married Women." This is made plain by the revisers' note to sec. 2067, which is as follows:

"Sec. 2067 is amended by writing 'these statutes' instead of 'this chapter' at the end, as there are other provisions besides those in this chapter affecting such estates; e. g., in the chapter on the rights of married women the joint tenancy of the common law in case of husband and wife is changed so that it shall be as between other tenants."

The words "other tenants" manifestly mean other joint tenants. This brings us to the question of the change actually made in "the joint tenancy of the common law in case of husband and wife" by "the chapter on the rights of married women," as found in the Revised Statutes of 1878. As indicated, ch. 95, R. S. 1858, related to property which the wife owned or might acquire in her own right, and not to such as she might hold jointly with her husband. By the revision of 1878 the title of the chapter was changed to "The *Property* Rights of Married Women." Sec. 1 of that chapter was amended by inserting immediately after the word "estate" the following words, "of every description, including

all held in joint tenancy with her husband," so that the same reads, with those words inserted in italics, as follows:

"The real estate *of every description, including all held in joint tenancy with her husband,* and the rents, issues and profits thereof, of any female now married, shall not be subject to the disposal of her husband, but shall be her sole and separate property as if she were unmarried." Sec. 2340, R. S. 1878.

So sec. 3 of that chapter, which authorized the wife to receive property from any one "other than her husband" was amended by inserting immediately after the words "estate therein" the following words, "of any description, including all held in joint tenancy with her husband." Sec. 2342, R. S. 1878. The revisers say in their note to sec. 2340 that such sections are

"amended so as to provide more certainly that *all* the real estate of the wife shall be at her sole disposal. It is supposed all is so by the section as it now stands, except the single case of a joint tenancy by the husband. That that case ought to be included is well illustrated by the consequences which happened the wife in the case of *Bennett v. Child,* 19 Wis. 362. The husband's creditors took not only his but her interest in the property jointly held, leaving her only the chance of survivorship. Under the rule as changed by this section the husband's share only can be disposed of by him or his creditors without the wife's action; and, thereby the joint tenancy being dissolved, she will hold her interest in common with the taker of the husband's share."

"Thus it appears," as stated in *Citizens' L. & T. Co. v. Witte,* 116 Wis. 64, 65, 92 N. W. 443, 445,

"that both sections, as so amended, as well as the revisers in their notes, treat the estate created by deed running to husband and wife, as in the case at bar, as an estate 'held in joint tenancy,' instead of being held as tenants of the entirety, as at common law." . . . "Manifestly, the revisers intended by the amendments to cover cases of tenants of the entirety held by husband and wife, especially as in

one section the words 'held in joint tenancy,' follow the words, 'the real estate of every description,' and in the other section follow the words 'any interest or estate therein of any description,' and in both sections they are followed by the words, 'and the rents, issues and profits thereof,' or their equivalent. Unless that is so, the new provisions inserted in the sections are without significance."

Both sections declare that the real estate so held by the wife "in joint tenancy with her husband" shall "be her sole and separate property, as if she were unmarried." There is nothing in the statute to prevent an unmarried female from becoming a joint tenant of real estate with another. In the case at bar the trial court held, as contended by counsel for the plaintiff, that such amendments did make the husband and wife tenants in common as to the rents, issues, and profits. But the amendments to one section of the statutes relate to "the real estate of every description" of any married woman, and in the other to the real estate "of any description" of any married woman. The statutes were not designed to be retroactive. They were prospective, and only relate to estates created after their enactment. The statutes make no distinction between rents, issues, and profits and the title to the property. The deeds in question were executed several years after the revision of 1878. We must hold that the deeds to the plaintiff and his wife, Agnes J., made them joint tenants and that such tenancy was severed by the deed from the wife, Agnes J., to the defendant, *Charles W. St. John.* The result is that the defendant, *Charles W. St. John,* and the plaintiff hold all the lands in question as tenants in common, as stated in the revisers' notes last quoted.

We have not overlooked the case of *Farr v. Trustees A. O. U. W.* 83 Wis. 446, 53 N. W. 738. That was an insurance certificate running to the wife and daughter, and it was held under sec. 2068 of the statutes that they took as joint tenants, with the right of survivorship. The question of hus-

band and wife was not involved, and the severance was not involved. Nor have we overlooked the case of *Feidler v. Howard,* 99 Wis. 388, 393, 75 N. W. 163. That case was determined upon the construction to be given to secs. 2068, 2069, R. S. 1878, and it was held that "a note and mortgage running to a husband and wife are held by them in joint tenancy, and upon the death of one go to the survivor, and not to the executor of the deceased for the payment of his debts." There was no question of severance of such joint tenancy involved, and no reference is made to the statutes giving rights to married women.

*By the Court.*—The judgment of the circuit court is reversed, and the cause is remanded with direction to dismiss the complaint.