336

ESTATE OF ABDDULAH: ABDDULAH, Appellant, vs. MA-
LONE, Administrator, and others, Respondents.

*December 6, 1933—March 6, 1934.*

The cause was submitted for the appellant on the briefs of *Sawyer & Gehl* of Hartford, and for the respondents Sarah Elias, Moses Abddulah, and Mary Morfates on that of *A. W. Lueck* and *J. L. Skupniewitz,* both of Beaver Dam.

A brief was also filed by *John A. Thiel* of Mayville, guardian *ad litem,* and *Eugene A. Clifford* and *Paul A. Hemmy, Jr.,* both of Juneau, for J. F. Malone, administrator.

The following opinion was filed January 9, 1934:

FOWLER, J. The evidence is entirely without dispute. The issue depends on the inference to be drawn from the evidence. Three items are involved which will be considered separately.

(1) One of the items is a promissory note of $5,000 secured by a real-estate mortgage on which $4,700 and some interest remained unpaid at decedent's death. Both the note and mortgage run to Joseph Abddulah and Lilly Abddulah. The money loaned upon the note was drawn by Joseph Abddulah from the joint savings account in the Woodland bank.

The respondents treat the claim of the appellant as if the item were a gift from Joseph to Lilly made at the time of the execution of the note and mortgage and contend that the gift is void for want of a manual delivery of either the bank pass-book or the note or mortgage from Joseph to Lilly. They wholly ignore the original source of the money

loaned which went into the note and mortgage. These, the $10,000 note and mortgage, by being payable to Joseph and his wife Lilly, were joint property and on the death of the husband would have passed to the wife. *Fiedler v. Howard,* 99 Wis. 388, 75 N. W. 163. As the note and mortgage would have so passed had they not been collected, so passed the avails of their collection. The designation of the deposit in the bank of Woodland of the avails recognized the joint ownership of the deposit and the right of survivorship, as did the making of the note and mortgage to them jointly. The title to both note and mortgage were in the husband and wife jointly. It seems beyond reasonable controversy that the appellant is entitled to have this item stricken from the inventory and to retain the note and mortgage and the interest unpaid thereon at the date of the husband's death as her individual property.

(2) Another item claimed by appellant is a $4,000 note and mortgage on which $3,600 and some interest was unpaid at decedent's death. The loan was negotiated by Joseph alone. The mortgage runs to him. The note runs to Joseph Abddulah and Lilly Abddulah. The payees' names are typed in the note and the words "and Lilly Abddulah" were typed on a Remington typewriter while the words "Joseph Abddulah" were typed on an Underwood. The Abddulahs had a typewriter which was used by their daughters, but never had a Remington, and each of the daughters, who were the only persons who used the machine, testified that she did not write the words "and Lilly Abddulah" in the note. It does not directly appear whether the words "and Lilly Abddulah" were in the note when it was signed. The maker testified that he could not remember, but that they "should have been," thus indicating that Joseph gave him to understand that his wife had an interest in the note. The money loaned on this note also came from the joint savings account of the husband and wife.

Other facts in evidence tend to support the inference that if the note was not originally payable to Joseph and Lilly it was subsequently made so by Joseph at Lilly's instance. Subsequent to the execution of the notes in controversy the husband and wife had trouble over property and on account of it the wife left the husband. At this time she went to one Faris, an Assyrian prominent among Assyrian people, and stayed for a while in his family. Faris sent for the husband and interceded to effect a reconciliation. He testifies that there was talk in the conversations leading to the reconciliation about $10,000, the amount of the original note and mortgage, and that the husband "promised to give her (the wife) what she wanted," and "said he would return the notes to her." The testimony was given long after the conversation occurred, and the statement of the witness was not definite, but it is a fair inference from his testimony that the wife was insisting on her rights in the avails of the original $10,000 note and mortgage and that the husband recognized these rights and agreed to accede them to her. The title to the note was placed in the husband and wife jointly. A mortgage is a mere incident to a note it secures. See 4 Callaghan's Wisconsin Digest, p. 3732, sec. 51. The title to the mortgage as well as the note was thus in the husband and wife jointly.

(3) The third item is an unsecured note of $1,000 payable to Joseph Abddulah. Joseph drew $5,516.20 from the joint account in the Woodland bank and deposited it in the Mayville bank. At the time he made this deposit his balance in the Mayville bank was only $104.75. The $1,000 represented by the note was checked out by the Mayville bank the same day the deposit was made and unquestionably came from the joint account in the Woodland bank.

This note stands upon a different footing from the other items. It was made payable to Joseph, and was not thereafter made payable to him and Lilly. The title to the note

was in Joseph and remained in him at his death. The title thereto was never placed in the husband and wife jointly, and did not pass to the wife by survivorship. The appellant could only have the note stricken from the inventory on the ground that she so acquired title thereto.

The trial judge made no findings of fact. But the evidence points so clearly to the inference of joint ownership of the two items first considered that findings to the contrary would have to be set aside as contrary to the clear preponderance of the evidence. There is therefore no need for findings to be made.

The respondents urge that Lilly Abddulah was originally a co-administrator of the estate and that by the entry of the items in the inventory she is estopped from asserting her ownership thereof. We see no element of estoppel by reason of the insertion. The estate was not thereby induced to take or keep from taking any steps to its disadvantage. The entry at most might be considered as a tacit admission of ownership in the estate, or of disavowal of personal ownership. But in view of the facts that the petitioner could neither read nor write, that her co-administrator was an attorney at law and would naturally take charge of the making of the inventory, and that the evidence does not disclose any participation of the petitioner in making the inventory or any knowledge on her part of its contents, we consider that the inclusion in the inventory does not suffice to overcome or materially affect the clear effect of the evidence stated.

The respondents also urge that the petitioner's remedy was to file a claim against the estate for the conversion by the deceased of her interest in the joint property. This is true as to the $1,000 note, and is the basis of our holding in respect thereto. But as to the other items, the proceeding was in effect "a contest over title to certain specific personal property, the executors (administrator) claiming it

belongs to them (him) for the estate, she claiming it as hers, rather than an ordinary claim against the assets of the estate." *Estate of Horkan,* 193 Wis. 286, 290, 214 N. W. 438. It is true that in the *Horkan Estate* the basis of the ruling in respect of the claim of the claimant to a certain note by its terms payable to the deceased was that the deceased held the note in trust for the claimant; but here as there the contest was over ownership of notes, and it is immaterial whether the claim is based upon trusteeship or survivorship.

*By the Court.*—The order of the county court is affirmed as to the $1,000 note; as to the other notes and the mortgages securing them the order is reversed with directions for entry of an order relating thereto in accordance with the opinion.

A motion for a rehearing was denied, with $25 costs, on March 6, 1934.