ESTATE OF FISCHER: LUNDE, Executrix, Appellant, v.
FISCHER, Respondent.

*February 5—March 3, 1964.*

638

640

■■■■■■■■■■■■

■■■■■■■■■■■■

For the appellant there was a brief and oral argument by *Alfred B. Gerber* of Sheboygan.

For the respondent there was a brief by *Gruhle, Fessler, Wissbroecker & Van de Water* of Sheboygan, and oral argument by *Jacob A. Fessler* and *Douglas K. Van de Water.*

CURRIE, C. J.   The following issue is presented by this appeal: Where a deceased husband has title in his individual name to nonhomestead real estate and then sells the same on land contract using a standard printed form in which husband and wife are named as parties of the first part (vendors), and payments thereunder are payable to the parties of the first part, who owns the vendors' interest in the land contract upon the death of the husband vendor?

Because a similar problem is presented in *Estate of Martin,* post, p. 649, 126 N. W. (2d) 549, which was argued and decided at this same assignment, we deem it advisable to lay down the governing principles of law before attempting to apply such principles to the particular facts here presented.

We start with the premise that a vendor's interest in a land contract is personalty and not real estate under the doctrine of equitable conversion, and that the vendor holds the bare legal title merely as security for payment of the unpaid purchase price. *Estate of Atkinson* (1963), 19 Wis. (2d) 272, 277, 120 N. W. (2d) 109, and *Mueller v. Novelty Dye Works* (1956), 273 Wis. 501, 505, 78 N. W. (2d) 881. Sec. 312.01 (4), Stats., enacted by ch. 415, Laws of 1959, which requires a deceased vendor's interest in a land contract to be inventoried in his estate as personal property, is merely a codification of the pre-existing common law. *Estate of Atkinson, supra,* at page 279.

Neither sec. 230.44, Stats.,[1] nor subs. (1) and (2) of sec. 230.45 [2] have any application to the issue now before us. Sec. 230.44 is limited to grants and devises of land and under the instant stated facts there never was a grant of any interest in the lands covered by the contract from the husband grantor to his wife. Likewise sub. (1) of sec. 230.45 refers only to sec. 230.44 and seeks to limit its application by excluding from its operation certain devises and grants which might be contended did cover an interest in land. We reject as unreasonable an interpretation of this subsection that, because some items of personalty are specifically mentioned as being excluded from the operation of sec. 230.44, that all personalty not specifically mentioned, such as a vendor's interest in a land contract, are subject to the converse of the rule stated in sec. 230.44. Sub. (2) of sec. 230.45 has no application because it is limited to direct transfers from husband to wife. Here there was a complete absence of such a transfer. Moreover, we find no other applicable statute which controls the issue here to be resolved.

Likewise, we have found no Wisconsin case which has decided such issue. However, the Michigan case of *Hend-*

[1] Sec. 230.44 reads: "All grants and devises of land made to two or more persons, except as provided in section 230.45, shall be construed to create estates in common, and not in joint tenancy, unless expressly declared to be in joint tenancy."

[2] Subs. (1) and (2) of sec. 230.45, provide: "(1) Section 230.44 shall not apply to mortgages, nor to devises or grants made in trust, or made to executors, or to husband and wife.

"(2) Any deed, transfer or assignment of real or personal property from husband to wife or from wife to husband which conveys an interest in the grantor's lands or personal property and by its terms evinces an intent on the part of the grantor to create a joint tenancy between grantor and grantee shall be held and construed to create such joint tenancy, and any husband and wife who are grantor and grantee in any such deed, transfer or assignment heretofore given shall hold the property described in such deed, transfer or assignment as joint tenants."

*ricks v. Wolf* (1937), 279 Mich. 598, 273 N. W. 282, is directly in point. There, certain lots owned by the husband alone were sold on land contracts which named the husband and wife as vendors. These contracts were prepared on one of the usual printed land-contract forms as was the instant land contract. The contracts provided (p. 599), "that the vendees, 'in consideration of the covenants herein made by first party, agrees to purchase of first party, the above described premises and to pay therefor to first party or their legal representatives . . . the sum of ——— Dollars.' " The husband vendor died and the surviving widow brought a bill in equity claiming that she was the sole owner of these contracts by right of survivorship. The trial court entered a decree adverse to the plaintiff widow and the Michigan supreme court affirmed and stated (*279 Mich. p. 602*) :

"Prior to the execution of any of the contracts, the legal title was held in the name of plaintiff's deceased husband. In the absence of a showing to the contrary, it must be *presumed that plaintiff joined in the execution of the contracts for the purpose of barring her inchoate dower rights.*" (Emphasis supplied.)

Lawyers in general practice engaged in drafting deeds and land contracts, which describe lands standing in the name of a husband grantor or vendor alone, know that frequently wives are made parties to such instruments for the sole purpose of barring their inchoate right of dower [3] without receiving any part of the purchase price. Significantly, 1 Wisconsin Practice Methods (2d ed.), by MacDonald, Pick,

---

[3] Such right of dower is conferred by sec. 233.01, Stats., which provides: "The widow of every deceased person dying after August 31, 1921, shall be entitled to a dower defined to be a one-third part of all the lands whereof her husband was seized of an estate of inheritance at any time during the marriage unless she is lawfully barred thereof. However, such widow shall have no dower in any homestead of which her husband died seized; instead she shall have homestead rights as provided in s. 237.02."

and DeWitt, p. 178, sec. 285, gives this advice with respect to drafting land contracts on printed Forms 33, 34, and 35:

"*If the vendor is a married man,* his wife should join in the execution of the land contract in order to release her dower and homestead interests and to bind her to sign the deed to be given at a later date. Accordingly, both of their names should be listed as parties of the first part and words added showing that she is his wife, e.g., John H. Jones and Mary S. Jones, his wife. Other forms are equally proper."

We deem the presumption laid down by the Michigan court in *Hendricks v. Wolf, supra,* is more in accord with the understanding usually existing between husband and wife at the time they join as parties in such a conveyance or land contract than would be the adoption of the converse presumption. Therefore, we adopt the rule of that case.[4] As enunciated by the Michigan court, this presumption, that the wife joined in the land contract solely to release her inchoate right of dower, is clearly a rebuttable one, because it is only to be accorded effect "in the absence of a showing to the contrary." Evidence sufficient to rebut the presumption would necessarily have to be either special language inserted in the contract tending to establish an agreement between the husband and wife vendors that the wife was to share in the ownership of the payments to be made by the vendee thereunder, or evidence dehors the contract tending to prove such an agreement.

There may be instances wherein the surviving widow named as a vendor in the land contract may be able to adduce evidence establishing an agreement between her deceased husband and her that she was to share in the payments made

---

[4] This result was at least partially predicted by Professor Richard W. Effland, Estate Planning: Co-Ownership, Seminar Series for Wisconsin Lawyers (1957), p. 19, wherein, after assuming a state of facts such as we have here, he stated, "It is likely that a court would find no intent to create survivorship rights."

by the vendee, but where such evidence falls short of proving what this sharing was to be. In such a situation, we hold that the widow's interest in the contract would be an undivided one third, thereby rejecting any presumption that because the vendors are husband and wife they hold in joint tenancy. The reasons which impel us to this conclusion are threefold. First, an undivided one third is in keeping with what her interest would be in the lands sold under the contract if she had not joined as a party vendor. See sec. 233.17, Stats. Second, this is the interest she would be entitled to in the lands should the vendee default and there would be a foreclosure of the vendee's interest. Third, courts of law now incline against joint tenancies.[5]

With respect to the last-mentioned point, we deem that even in case of husband and wife, a presumption that they hold as joint tenants should not be indulged in with respect to *personal property* where there exists a better policy reason for holding that there is no joint tenancy. Merely, because a conveyance of real estate to husband and wife results in a presumption that a joint tenancy was created does not require that this same presumption must in all cases be applied to transfers of personalty to husband and wife.[6] In support of its position, contrary to the foregoing, petitioner cites *Fiedler v. Howard* (1898), 99 Wis. 388, 393, 75 N. W. 163, which held that a note and mortgage payable to husband and wife created a joint tenancy. The court therein

---

[5] This was so stated in *Breitenbach v. Schoen* (1924), 183 Wis. 589, 592, 198 N. W. 622. As authority the court cited 33 C. J., Joint Tenancy, p. 905, sec. 6. The corresponding citation in C. J. S. is 48 C. J. S., Joint Tenancy, p. 918, sec. 3. Courts of equity have always abhorred joint tenancies. Cotter, Joint Tenancies in Wisconsin, 39 Marquette Law Review (1955), 110, 113.

[6] Among the cases which have applied such presumption to conveyances of real estate are *Will of Ray* (1925), 188 Wis. 180, 205 N. W. 917; *Bassler v. Rewodlinski* (1906), 130 Wis. 26, 109 N. W. 1032; *Wallace v. St. John* (1903), 119 Wis. 585, 97 N. W. 197; and *Citizens' Loan & Trust Co. v. Witte* (1902), 116 Wis. 60, 92 N. W. 443.

cited and relied upon *Draper v. Jackson* (1820), 16 Mass. 480, which was stated to have recognized the common-law rule that "when an estate is granted to husband and wife, they take by entireties, and not by moieties." Reliance on *Draper v. Jackson, supra,* however, was poorly placed because Massachusetts considers a mortgage to be a grant of an interest in real estate,[7] while in Wisconsin a mortgage is considered to be personalty. A different approach to this problem is found in *Estate of Abddulah* (1934), 214 Wis. 336, 252 N. W. 158, where the court did not rely on any presumption that the husband and wife took a note and mortgage as joint tenants, but decided the issue of the nature of the tenancy in personalty on a factual basis, the determinative fact being that the money loaned to the mortgagor came from the joint bank account of the husband and wife.[8]

Having laid down the general principles of law which we consider should be applied in resolving the issue stated in the opening paragraph of this opinion, we now turn to the facts of this case, to ascertain whether they are sufficient to rebut the presumption that petitioner executed the land contract solely to bar her inchoate right of dower. Not only do we find a complete absence of any evidence which tends to prove an agreement between petitioner and deceased, but what evidence there is, negatives such an agreement. When petitioner was asked what interest she had in the farm or the land contract she replied, "I just had the interest that I would get my money back . . . what I borrowed [loaned]." This refers to the $2,000 she loaned deceased which he repaid to her out of the $10,000 proceeds realized from the sale of the farm personalty. Therefore, the effect of this testimony on her part is that after this $2,000 was repaid to her she did not

[7] See *Perry v. Miller* (1953), 330 Mass. 261, 112 N. E. (2d) 805.

[8] See also, on this point, Effland, Estate Planning: Co-Ownership, Seminar Series for Wisconsin Lawyers (1957), p. 18, who states that whether joint obligees have survivorship rights in Wisconsin is today a matter of intent.

consider that she had any interest in the land contract. Furthermore, the payments that were made by the vendees under the contract were paid to the deceased alone.

Counsel for petitioner places great reliance upon the fact that the instant land contract was drafted on printed Form 33 instead of Form 36. One difference between the two forms is that Form 36 contains this additional provision: "the wife of the Vendor for a valuable consideration, joins herein to bar her dower and homestead rights and agrees to join in the execution of the deed to be made in fulfillment hereof." Form 36 was not approved until 1956 and for some time was not generally available. 1 Wisconsin Practice Methods (2d ed.), by MacDonald, Pick, and DeWitt, p. 177, sec. 284. Furthermore, there is nothing in the record before us which would suggest that a conscious choice was made between use of Forms 33 and 36 for the purpose of vesting petitioner with an ownership in the payments to be made by the vendees. The selection of Form 33 was made in the first place by the attorney for the vendees. We do not deem that the use of Form 33 instead of Form 36 should be a controlling factor in determining the issue before us. We are fortified in arriving at this conclusion by the fact that a 34-page comment on Form 36, 1958 Wisconsin Law Review, 260, which discusses many innovations wrought by this new printed form, fails to even mention the above-quoted provision relating to release of dower as one of the innovations sought to be made by use of such Form 36.

Our final conclusion is that this case is governed by the presumption that petitioner joined in the land contract solely to release her dower, because there is no evidence which rebuts this presumption. Therefore, the land contract was properly inventoried in the estate of the deceased as an asset of the estate.

*By the Court.*—Judgment reversed.